# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

TERRANCE KYLE MOORE,                  )
                                      )
                    Petitioner,       )
                                      )
v.                                    )          Case No. 12-CV-0173-CVE-FHM
                                      )
ROBERT PATTON, Director,[1]           )
                                      )
                    Respondent.       )

## OPINION AND ORDER

Before the Court is the petition for writ of habeas corpus (Dkt. # 1) filed by Petitioner, a state

inmate appearing pro se.  Respondent filed a response (Dkt. # 7), and provided the state court

records necessary for adjudication of Petitioner's claims (Dkt. ## 7, 8).  Petitioner filed a reply (Dkt.

# 9).  For the reasons discussed below, the petition is denied.

### *BACKGROUND*

On August 26, 2008, Alecia Estep went to the apartment of her former boyfriend, Kevin

Jones, to retrieve her social security card.  She found Jones dead, lying in the bathtub.  She observed

bruises all over his body.  The police arrived and, after Jones was declared dead, Jones' body was

moved.  At that time, the police observed stab wounds in Jones' back.  Estep told police that two

people, Natasha Sanders and Petitioner, Terrance Kyle Moore, had been living with Jones.  Estep

also told police that Sanders has assaulted Jones before and that she always carried knives.

---

[1]Petitioner is presently in custody at Lawton Correctional Facility, a private prison located
in Lawton, Oklahoma.  Therefore, the proper respondent is Robert Patton, Director of the Oklahoma
Department of Corrections.  For that reason, Robert Patton, Director, is substituted as party
respondent in place of C. Chester, Warden.  The Clerk of Court shall note the substitution on the
record.

On August 27, 2008, Petitioner and Sanders were arrested and interviewed separately by police. During his videotaped interview, Petitioner admitted that he became enraged when he learned that Jones and Sanders had kissed and that he proceeded to beat up Jones. However, he denied stabbing Jones and claimed that Sanders must have been responsible for the stabbing.

Based on those events, both Petitioner and Sanders were charged, by Information filed in Tulsa County District Court, Case No. CF-2008-4456, with "murder in the first degree . . . while acting in concert, each with the other, with malice aforethought . . . [to] effect the death of Kevin A. Jones by beating, choking, and stabbing . . . ." (Count 1). (Dkt. # 8-2, Tr. Vol. II at 360). Sanders was also charged with Accessory After the Fact (Count 2).[2] Petitioner received a jury trial. At the conclusion of the trial, after being instructed on the law of aiding and abetting (Dkt. # 7-7 at 1, 2 (Instruction Nos. 14 and 15)), the jury found Petitioner guilty of First Degree Murder. On November 9, 2009, the trial judge sentenced Petitioner, in accordance with the jury's recommendation, to life imprisonment with the possibility of parole and imposed a $10,000 fine. Assistant Public Defender Paula Keck Moore represented Petitioner at trial.

Represented by Assistant Public Defender Stuart W. Southerland, Petitioner perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). Petitioner raised ten (10) propositions of error, as follows:

Proposition 1:      Appellant's arrest was unlawful, tainting all which followed. Appellant's post-arrest statement should have been suppressed. In the absence of Appellant's admissions, there was insufficient evidence on which to base a conviction for First Degree Murder.

---

[2]On March 23, 2010, Sanders entered a plea of guilty to Accessory After the Fact (Count 2) and her First Degree Murder charge (Count 1) was dismissed. Sanders was sentenced to twenty-three (23) years in prison.

Proposition 2:   The State offered prejudicial co-defendant statements in violation of the Oklahoma evidence code and the Confrontation Clause of the United States Constitution.

Proposition 3:   It was reversible error for the district court to refuse Appellant's request for an instruction on the offense of Accessory After the Fact.

Proposition 4:   The jury should have been instructed on the offense of Misdemeanor Manslaughter. Appellant was denied the right to a fair trial and due process under the Fourteenth Amendment to the United States Constitution.

Proposition 5:   Appellant's conviction must be reversed. The State relied upon an exculpatory statement by the accused which was not disproved by the evidence. In the alternative, it was error for the district court to fail to provide the jury with an exculpatory statement instruction pursuant to OUJI-CR 2d 9-14 and Appellant's conviction must be remanded for a new trial.

Proposition 6:   It was error for the district court to admit photographs of the victim which were either irrelevant, or had a prejudicial effect which exceeded any probative value.

Proposition 7:   It was reversible error to give a flight instruction in this case. The instruction undermined Appellant's right to a fair trial under the Fourteenth Amendment to the United States Constitution.

Proposition 8:   Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Proposition 9:   The trial court erred by replacing a juror – after deliberations began – with the alternate. The excused juror was neither sick nor dead, and the alternate had not been sequestered either physically or by admonition before joining the remaining jurors.

Proposition 10:   The combined error during Appellant's trial served to deny him the right to due process and a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution.

(Dkt. # 7-1). In an unpublished Summary Opinion, filed January 27, 2011, in Case No. F-2009-1059, the OCCA denied relief and affirmed the Judgment and Sentence of the district court. (Dkt. # 7-3).

On October 25, 2011, Petitioner filed an application for post-conviction relief. (Dkt. # 7-4). In his application for post-conviction relief, Petitioner claimed that (1) he received ineffective assistance of appellate counsel when counsel "failed to contact jurors in order to determine the prejudice flowing from the district court's decision – over defense counsel's objection – to substitute a juror who had to leave to pick up her children with an alternate juror who had been permitted, some five hours earlier, to leave the courthouse and go about his business," and (2) new evidence establishes that he was prejudiced by the trial judge's refusal to instruct on Accessory After the Fact. Id. In support of the application for post-conviction relief, Petitioner provided the affidavit of his appellate counsel, Stuart W. Southerland. Id. at 13-14. In his affidavit, Southerland states that, after conclusion of Petitioner's direct appeal, he contacted Estrella Kenoly, the juror who was excused during deliberations. Id. at 13, ¶ 2. Kenoly told Southerland that, had she been able to remain on the jury, "she would not have voted to convict Terrance Moore of the crime of first degree murder." Id. at ¶ 8. The trial judge denied the application for post-conviction relief by order filed December 7, 2011. (Dkt. # 7-5). Significantly, Petitioner did not perfect a post-conviction appeal.

Petitioner commenced this federal action by filing a pro se petition for writ of habeas corpus. (Dkt. # 1). Petitioner raises five (5) grounds of error, as follows:

> Ground 1: The Confrontation Clause of U.S. Constitution.
> The State brought evidence to the court from co-defendant, but would not allow defense to question. State court made error in allowing evidence and then not allowing defense to confront witness.

Ground 2:     Due process under 14th Amendment to U.S. Constitution: Petitioner was denied right to a fair trial.
Petitioner admitted to being in a fist fight with victim. But victim died of knife, stab wounds. Jury should have been instructed to lesser offense than murder.

Ground 3:     Flight instruction was given undermining Petitioner's right to fair trial in violation to [sic] 14th Amendment to U.S. Constitution.
Flight instruction should not have been given to jury. It was not clear that Petitioner attempted to flee the scene of crime.

Ground 4:     Ineffective assistance of council [sic] 6th Amendment of U.S. Constitution. Defense council [sic] failed to raise objections on critical issues during trial that could have changed the outcome of the trial at least 5 times.

Ground 5:     Under the facts of the case before this Court, the substitution of a juror during deliberations with an alternate violated both Oklahoma law and the Fourteenth Amendment to the United States Constitution.
This Court failed to address how the State overcame the presumption of prejudice which arises when an alternate juror is seated who was not sequestered physically or by admonition.

(Dkt. # 1). Respondent argues that the OCCA's adjudications of grounds 1 and 4 were not contrary to, or unreasonable applications of, federal law, and that grounds 2, 3, and 5 are state law issues not cognizable on federal habeas review. (Dkt. # 7). In his reply (Dkt. # 9), Petitioner fails to address Respondent's arguments. Instead, he raises new claims, including a claim of improper conduct by the prosecutor and new allegations of ineffective assistance of trial counsel. Those new claims, first raised in Petitioner's reply, are not properly before the Court and will not be addressed. See Jordan v. Wiley, 411 F. App'x 201, 212 n.9 (10th Cir. 2011) (unpublished)[3] ("[A]n issue raised for the first time in a traverse . . . [is] not properly before the district court – a point emphasized by the fact that the district court in this case did not address [the issue].").

_____

[3]This and other unpublished court decisions herein are not precedential but are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

*ANALYSIS*

**A.     Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b).   Rose v. Lundy, 455 U.S. 509, 510 (1982).   Petitioner presented his claims to the OCCA on direct appeal.   Therefore, he has exhausted his state court remedies.

In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing.   Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.   Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).   When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.   Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).   "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011).

1.     **Confrontation Clause (ground 1)**

As his first ground of error, Petitioner alleges that the trial court improperly allowed admission of a statement made by Sanders, Petitioner's non-testifying co-defendant, without opportunity for cross-examination by defense counsel in violation of his rights under the Confrontation Clause. See Dkt. # 1 at 6. On direct appeal, Petitioner argued that, more than once, the prosecutor improperly asked detectives about information concerning Petitioner's access to knives, information that could have only been provided by Sanders. See Dkt. # 7-1 at 11-16. The OCCA denied relief on this claim, finding that any confrontation clause violation was harmless and explaining as follows:

> [T]he prosecutor elicited hearsay information from police witnesses, suggesting that someone (presumably, co-defendant Sanders) had told them Appellant received a knife over a week before Jones was killed. The prosecutor did this only after defense counsel had elicited hearsay of her own, from the same detectives (and from an additional witness), indicating that Sanders had a history of violence, especially when drunk; that she had a collection of knives, and had cut people before; and that the victim, Jones, was afraid of her. In fact, it was defense counsel's choice to name Sanders as the source of the information elicited by the prosecutor's questions. With no eyewitnesses to the murder except Appellant and Sanders, and no physical evidence pointing to either as having wielded the murder weapon, it was obviously in the interest of the defense to portray Sanders as having a violent disposition, and a fondness for knives – to make it more likely that she, not Appellant, inflicted the fatal wounds. Because Sanders did not testify at Appellant's trial, defense counsel successfully used hearsay to accomplish this goal. The prosecutor responded in kind, but reminded the jury, in closing argument, that Appellant was charged with aiding and abetting Sanders in the murder, and that the law did not care which of the two actually did the stabbing. The statement Appellant complains of did not directly implicate him in the stabbing of Jones. Whether Appellant was given a knife several days before the murder was of marginal probative value; the real issue was not possession, but access. The fact that Sanders possessed several knives in the same apartment was never disputed, and the weapon actually used to stab Jones was never found. Under these circumstances, we find any

error in admitting Sanders's extrajudicial statement to be harmless beyond a reasonable doubt. *Hunt v. State*, 2009 OK CR 21, ¶ 12, 218 P.3d 516, 519.

(Dkt. # 7-3 at 3-4).

The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Crawford v. Washington, 541 U.S. 36, 38 (2004). When a petitioner raises a claim that his right to confront witnesses against him was violated, the Court must "employ a multi-part inquiry to determine if the right to confrontation has been violated. [The Court] examine[s] (1) whether the challenged evidence is hearsay; (2) whether it is testimonial; and (3) if the evidence is testimonial hearsay, whether its introduction was harmless error." United States v. Mendez, 514 F.3d 1035, 1043 (10th Cir. 2008) (citing United States v. Summers, 414 F.3d 1287, 1299-1303 (10th Cir. 2005)).

"Confrontation Clause errors are subject to . . . harmless-error analysis." Littlejohn v. Trammell, 704 F.3d 817, 844-45 (10th Cir. 2013) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); see Coy v. Iowa, 487 U.S. 1012, 1021-22 (1988); United States v. Robinson, 583 F.3d 1265, 1275-76 (10th Cir. 2009); cf. Bullcoming v. New Mexico, 131 S. Ct. 2705, 2719 n.11 (2011)). According to Brecht v. Abrahamson, 507 U.S. 619 (1993), "the Confrontation Clause harmless-error analysis [is] a somewhat different shade." Littlejohn, 704 F.3d at 844-45. In Brecht, the Supreme Court concluded that "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, 507 U.S. at 637 (citing United States v. Lane, 474 U.S. 438, 449 (1986)). In determining whether error was harmless in the context of a Confrontation Clause violation raised in a habeas petition, the court will "consider factors such as the 'importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence

or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case.'" Littlejohn, 704 F.3d at 845 (quoting Van Arsdall, 475 U.S. at 684; accord Jones v. Gibson, 206 F.3d 946, 957 (10th Cir. 2000); see Wiggins v. Boyette, 635 F.3d 116, 121-22 (4th Cir. 2011)).

In this case, even if the testimony concerning Petitioner's access to a knife falls into the category of "testimonial hearsay," invoking the protections of the Confrontation Clause, the error by the trial court in admitting the statement was harmless. See Mendez, 514 F.3d at 1043; Littlejohn, 704 F.3d at 844. The State presented evidence, including Petitioner's videotaped interview, establishing, beyond a reasonable doubt, that, at the least, Petitioner seriously injured Jones and participated as a principal in the events resulting in Jones' death. Thus, the evidence against Petitioner was substantial, even without the statement attributable to Sanders.

Therefore, after a review of the record and the transcripts, this Court finds that any error in admission of the non-testifying co-defendant's statement was harmless in light of the strong evidence supporting Petitioner's conviction. Petitioner is not entitled to habeas relief on Ground 1.

### 2. Failure to instruct on lesser offenses (ground 2)

As his second ground of error, Petitioner claims that because he "admitted to being in a fist fight with [the] victim, but [the] victim died of knife, stab wounds, [the] jury should have been instructed to [sic] lesser offense than murder." (Dkt. # 1 at 7). On direct appeal, Petitioner argued that the jury should have received instructions on Accessory After the Fact and Misdemeanor Manslaughter. (Dkt. # 7-1 at 17-22). The OCCA denied relief, finding that,

> Appellant told police that Jones was still alive when he assisted Sanders in moving Jones's body. Furthermore, even assuming that only Sanders stabbed Jones, Appellant admitted he was beating Jones about the head at the same time. The trial

> court did not err in rejecting instructions on Accessory After the Fact, because on these facts, no rational juror could have acquitted Appellant of aiding in the murder, and convicted him merely of helping Sanders escape punishment.

(Dkt. # 7-3 at 4 (citations omitted)). In addition, the OCCA found "no plain error in the trial court's failure to include an instruction on Misdemeanor Manslaughter (homicide in the commission of assault and battery)." Id. at 5 (citation omitted).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977))); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). "An omission or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Maes, 46 F.3d at 984 (citations omitted).

Petitioner has failed to demonstrated that any error in the jury instructions rendered his trial fundamentally unfair. The Court agrees with the OCCA's assessment that the evidence presented to the jury did not support an instruction on Accessory After the Fact. That evidence demonstrated that Petitioner beat Jones about the head, moved Jones while still alive to the bathtub, and did nothing to help Jones during the 10-15 minutes that passed before he died. As a result, Petitioner, at the least, aided and abetted in the murder of Jones. Based on those facts, Petitioner's trial was not rendered fundamentally unfair by the trial court's refusal to instruct on Accessory After the Fact, as requested by defense counsel, and Petitioner is not entitled to habeas corpus relief on this part of ground 2.

Furthermore, Petitioner is not entitled to habeas corpus relief on his claim that the trial court erred in failing to instruct the jury on the lesser included offense of misdemeanor manslaughter. "[A] petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'" Lujan v. Tansy, 2 F.3d 1031, 1036 (10th Cir. 1993) (quoting Chavez v. Kerby, 848 F.2d 1101, 1103 (10th Cir. 1988)); see also Hicks v. Jones, 350 F. App'x 199, 202 (10th Cir. 2009) (unpublished). Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction. Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). Accordingly, Petitioner's claim for habeas relief based on the trial judge's failure to instruct on the lesser included offense of misdemeanor manslaughter shall be denied.

### 3.     Flight instruction (ground 3)

In ground 3, Petitioner complains that the trial judge improperly gave a jury instruction on flight. (Dkt. # 1 at 8). On direct appeal, Petitioner argued that the instruction should not have been given because he presented no evidence and that the instruction is "appropriate only if a defendant denies flight or offers evidence to explain the conduct that appears to constitute flight." See Dkt. # 7-1 at 31. The OCCA denied relief, citing Andrews v. State, 164 P.3d 176, 200 (Okla. Crim. App. 2007), and Jones v. State, 128 P.3d 521, 539 (Okla. Crim. App. 2006), and finding that "while Appellant did not testify, he did explain his departure from the scene when talking to police. Out-of-court explanations to third parties are sufficient to warrant instructing the jury on inferences it may draw from a defendant's flight." (Dkt. # 7-3 at 5-6).

Federal habeas relief is not permitted for state law errors. <u>Rose v. Hodges</u>, 423 U.S. 19, 22 (1975); <u>Patton v. Mullin</u>, 425 F.3d 788, 807 (10th Cir. 2005) (stating that, in general, matters concerning the giving of jury instructions are considered questions of state law and not proper subjects of federal habeas corpus review under 28 U.S.C. § 2254). As discussed above, it is well established that "errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" <u>Nguyen</u>, 131 F.3d at 1357 (citation omitted).

Upon review of the record, the Court finds that Petitioner was not denied a fundamentally fair trial as a result of the flight instruction issued by the trial court. The record confirms that defense counsel lodged no objection to the flight instruction. (Dkt. # 8-4, Tr. Vol. IV at 679-82). As stated above, the OCCA found that Petitioner explained "his departure from the scene when talking to police." (Dkt. # 7-3 at 5). That finding of fact by the OCCA is presumed correct and may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner does not dispute and offers no evidence to rebut the finding that, although he did not testify and offered no explanation for his departure to the jury, Petitioner explained his departure to police. Thus, pursuant to state law, the flight instruction was proper. Petitioner has failed to demonstrate that he was deprived of a fair trial or due process of law as a result of the flight instruction. Petitioner is not entitled to habeas corpus relief on ground 3.

### 4.    Ineffective assistance of trial counsel (ground 4)

As his fourth ground of error, Petitioner asserts that he received ineffective assistance of trial counsel. (Dkt. # 1 at 10). He claims that "at least 5 times," trial counsel failed to object on issues "that could have changed the outcome of the trial." <u>Id.</u> On direct appeal, Petitioner argued that counsel performed deficiently for failing to (1) challenge the legality of his arrest, (2) object to

admission of statements made to police by his non-testifying co-defendant, (3) request a misdemeanor manslaughter instruction, (4) request an instruction on "exculpatory statements of fact," and (5) object to the flight instruction. (Dkt. # 7-1 at 34-36). The OCCA denied relief, citing, inter alia, Strickland v. Washington, 466 U.S. 668, 687 (1984), and finding that "Appellant has failed to establish either that counsel's performance was deficient, or that any deficient performance can reasonably be said to have affected the outcome of the trial." (Dkt. # 7-3 at 6).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of, Strickland, 466 U.S. 668. See 28 U.S.C. § 2254(d). "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Richter, 562 U.S. at 101 (quoting Williams v. Taylor, 529 U.S. at 410 (O'Connor, J. concurring)). "Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 102. Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Id.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 112.

This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). Under Strickland, Petitioner "must show that 'counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'" Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011) (quoting Strickland, 466 U.S. at 687). Petitioner fails to make the necessary showing.

### a. Failure to challenge the legality of arrest

Petitioner complains that trial counsel provided ineffective assistance in failing to challenge the legality of his arrest. On direct appeal, Petitioner claimed that his arrest was unlawful because there was neither an arrest warrant nor sufficient cause for the arrest. The OCCA reviewed Petitioner's underlying claim for plain error because defense counsel failed to object. See Dkt. # 7-3 at 2-3. The OCCA denied relief, finding no plain error because "police had sufficient

information, from their investigation, to give them probable cause to believe Appellant and his co-defendant were involved in the murder of the victim." Id. at 3 (citation omitted).

Upon review of the record, this Court finds that Petitioner cannot satisfy either prong of Strickland. During their investigation, the police learned that Jones' death was the result of violence; that although both Petitioner and Sanders had been living in the apartment with Jones during the time immediately preceding Jones's death, there was no sign of their presence in the apartment when Jones's body was found; that Sanders had threatened and assaulted Jones in the past; and that Jones was afraid of Petitioner and Sanders. That information provided justification for the police to consider Petitioner and Sanders persons of interest and to transport them to the police station to be interviewed. Thus, any challenge to Petitioner's arrest would have been baseless and defense counsel did not perform deficiently in failing to pursue such a challenge. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

### b. Failure to challenge admission of statements made to police by Sanders

Next, Petitioner claims that trial counsel provided ineffective assistance in failing to challenge the admission of statements made to the police by his non-testifying co-defendant. Significantly, trial counsel did in fact lodge an objection to admission of the statement. See Dkt. # 8-3, Tr. Vol. III at 646-47. As a result, this claim of ineffective assistance of counsel lacks merit. Neill, 278 F.3d at 1059 (finding that claim of ineffective assistance of counsel for failure to object was not supported where record demonstrated that counsel did in fact object). Petitioner has failed to demonstrate that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

### c. Failure to request a misdemeanor manslaughter instruction

Petitioner alleges that trial counsel provided ineffective assistance in failing to request a misdemeanor manslaughter instruction. On direct appeal, the OCCA found that,

> Jones died from being stabbed numerous times with a sharp object. Even if the jury believed Appellant's claim that he merely punched Jones, such conduct was not the proximate cause of death. *See* OUJI-CR (2nd) No. 4-60. There was no plain error in the trial court's failure to include an instruction on Misdemeanor Manslaughter (homicide in the commission of assault and battery). *Harris [v. State*, 84 P.3d 731, 750 (Okla. Crim. App. 2004)].

(Dkt. # 7-3 at 5). At trial, the medical examiner testified that the "specific cause of death" was "sharp force wounds of the chest." <u>See</u> Dkt. # 8-3, Tr. Vol. III at 604. While Petitioner admitted beating Jones about the head, he denied stabbing him. Thus, as stated by the OCCA, Petitioner's admitted conduct was not the proximate cause of Jones's death and an instruction on misdemeanor manslaughter was not warranted. As a result, trial counsel did not perform deficiently in failing to request the instruction. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

### d. Failure to request an instruction on "exculpatory statements of fact"

Petitioner also alleges that trial counsel provided ineffective assistance in failing to request a instruction on "exculpatory statements of fact." On direct appeal, Petitioner argued that because he admitted to beating Jones about the head, denied that he stabbed Jones, and surmised that Sanders must have stabbed Jones, the trial court erred in failing to instruct on the State's burden to disprove any "exculpatory statement of fact." <u>See</u> Dkt. # 7-1 at 23-25. The OCCA found no plain error and ruled that Petitioner's "statement was not exculpatory, because he admitted assisting his co-defendant in moving the victim before he died." (Dkt. # 7-3 at 5).

The Court agrees with the OCCA that Petitioner's statement to police was not exculpatory. Therefore, Petitioner cannot demonstrate that trial counsel performed deficiently in failing to request an instruction on "exculpatory statements of fact." Petitioner has failed to demonstrate that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

### e. Failure to object to the flight instruction

As his final claim of ineffective assistance of trial counsel, Petitioner alleges that counsel provided ineffective assistance in failing to object to the flight instruction. On direct appeal, the OCCA denied relief on Petitioner's claim that the flight instruction should not have been given. As a result, Petitioner cannot demonstrate that trial counsel performed deficiently in failing to object to the flight instruction. Nor can Petitioner satisfy the prejudice prong of <u>Strickland</u>. Petitioner has failed to demonstrate that the OCCA's adjudication of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

### 5.    Juror substitution (ground 5)

In ground 5, Petitioner claims that he was denied his right to a fair trial when, after the jury had begun deliberations, the trial judge allowed substitution of the alternate juror who had not been sequestered either physically or by admonition. (Dkt. # 1 at 11). On direct appeal, Petitioner focused his claim on state law, citing to the Fourteenth Amendment of the United States Constitution in only the concluding paragraph of his argument. <u>See</u> Dkt. # 7-1 at 37-42. The OCCA denied relief, citing state law and finding as follows:

> [D]uring deliberations, the trial court replaced one sitting juror with an alternate due to a personal scheduling conflict. Before excusing the juror, the trial court made efforts to resolve the problem by other means, but was unsuccessful. We have held that the trial court's discretion to excuse empaneled jurors, and substitute them with alternates, is not limited to cases where the sitting juror has died or become too ill

to serve. *See* 22 O.S.2001, § 601b; *Miller v. State*, 2001 OK CR 17, ¶ 23 n.5, 29 P.3d 1077, 1082-83 n.5; *Washington v. State*, 1977 OK CR 240, ¶ 26, 568 P.2d 301, 307-08. In this case, the excused juror was replaced with an alternate that had been duly selected by the parties for just such a contingency. Appellant also complains that when the case was first submitted to the jury, the alternate was allowed to go home, and that the record does not show he was admonished not to discuss the case until a verdict had been reached (in the event he might be recalled). However, Appellant failed to request such an admonition at the time the alternate was excused, and has waived any complaint at this time. *Cf. Elliott v. State*, 1988 OK CR 81, ¶ 15, 753 P.2d 920, 922. The trial court did not abuse its discretion here.

(Dkt. # 7-3 at 6-7 (footnote omitted)).

Respondent asserts that the issues presented in this ground of error are matters of state law and are not cognizable in this habeas corpus action. (Dkt. # 7 at 23-25). To the extent Petitioner's claim challenges the trial judge's resolution of the issues that arose during the jury's deliberations based on only state law, the Court agrees that federal habeas corpus relief is not available. See Smith v. Hannigan, 1993 WL 482938, *2 (10th Cir. Nov. 23, 1993) (unpublished) (finding that a habeas petitioner's challenge under state law to a trial court's refusal to replace a juror who was an employee of one of the victim/witnesses was not cognizable). As stated above, "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715, 748 (10th Cir. 2010). In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68.

In his habeas petition, Petitioner also states that the substitution of the alternate juror during deliberations violated the Fourteenth Amendment of the United States Constitution. See Dkt. # 1 at 11. As stated above, Petitioner mentioned the Fourteenth Amendment in presenting this claim to the OCCA. See Dkt. # 7-1 at 37-42. Although the OCCA did not reference the Fourteenth Amendment in denying relief, this Court nonetheless presumes that the claim was adjudicated on

the merits as required for application of § 2254(d) standards. Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). In support of his Fourteenth Amendment claim, Petitioner writes: "[the OCCA] failed to address how the State overcame the presumption of prejudice which arises when an alternate juror is seated who was not sequestered physically or by admonition." Id.

After the parties' closing arguments, the trial judge allowed the alternate, Juror Mitchell, to "go about [his] business," without further admonishment. (Dkt. # 8-4, Tr. Vol. IV at 723). The remaining twelve (12) jurors began deliberations. Several hours later, around 5 p.m., the jury sent out three (3) notes. One of the notes asked, "due to family obligations, a member of the jury must be released at or before 6:00 o'clock, is this possible?" Id. at 728. The jury was brought into the courtroom. Juror Kenoly explained that she had to pick up her children at 6:00 p.m. from daycare and that she had no possible alternative options for providing care for her young children. Id. at 733. The trial judge, the prosecutor, and defense counsel discussed the issue at the bench. Id. at 736-38. The trial judge telephoned the daycare provider who insisted that the children be picked up by 6:00 p.m. Id. at 741-42. After discussing options for resolving the issue, the trial judge determined that the best available option was to allow Juror Kenoly to leave and to replace her with the alternate, Juror Mitchell. Id. at 743. The record reflects that, after substitution of the alternate, the jury continued deliberations and returned with a guilty verdict at about 8:30 p.m. Id. at 749.

Almost twenty (20) years ago, in Claudio v. Snyder, 68 F.3d 1573 (3d Cir. 1995), cert. denied, 517 U.S. 1109 (1996), the Third Circuit Court of Appeals reviewed a claim brought by a habeas corpus petitioner challenging the state court's decision to substitute an alternate juror after

jury deliberations had already begun. The Court cited decisions from other jurisdictions, including

federal cases discussing Fed. R. Crim. P. 24(c),[4] and found no violation of the petitioner's right to

a jury trial under the Sixth and Fourteenth Amendments, explaining as follows:

> The Supreme Court has not specifically ruled on the constitutionality of substituting
> an alternate juror after jury deliberations have begun. Most of the federal courts that
> have addressed the issue, however, have held that when circumstances require,
> substitution of an alternate juror in place of a regular juror after deliberations have
> begun does not violate the Constitution, so long as the judge instructs the
> reconstituted jury to begin its deliberations anew and the defendant is not prejudiced
> by the substitution. See, e.g., United States v. Guevara, 823 F.2d 446, 448 (11th Cir.
> 1987); Peek v. Kemp, 784 F.2d 1479, 1484-85 (11th Cir. 1986) (en banc), cert.
> denied, 479 U.S. 939, 107 S. Ct. 421, 93 L. Ed. 2d 371 (1986); Miller v. Stagner, 757
> F.2d 988, 995 (9th Cir. 1985), cert. denied, 475 U.S. 1048, 106 S. Ct. 1269, 89 L. Ed.
> 2d 577 (1986), and cert. denied sub nom., Freeman v. Stagner, 475 U.S. 1049, 106
> S. Ct. 1271, 89 L. Ed. 2d 579 (1986); United States v. Josefik, 753 F.2d 585, 587
> (7th Cir. 1985), cert. denied sub nom., Soteras v. U.S., 471 U.S. 1055, 105 S. Ct.
> 2117, 85 L. Ed. 2d 481 (1985); United States v. Hillard, 701 F.2d 1052, 1056-57
> (2nd Cir. 1983); United States v. Evans, 635 F.2d 1124, 1128 (4th Cir. 1980). But
> see United States v. Lamb, 529 F.2d 1153, 1156-57 (9th Cir. 1975) (en banc)
> (finding impermissible coercion of juror when original jury required four hours to
> render verdict but reconstituted jury required only twenty-nine minutes).

> In both Peek v. Kemp, 784 F.2d at 1484-85, and Miller v. Stagner, 757 F.2d at 995,
> federal courts declined to grant habeas corpus relief to petitioners convicted in state
> proceedings by juries including one or more alternates substituted after jury
> deliberations had begun. In Miller, two jurors were dismissed on the fifth day of jury
> deliberations and replaced with alternates over the objections of defense counsel.

---

[4] In 1995, when Claudio was decided, Fed. R. Crim. P. 24(c) required the court to discharge
all alternate jurors when the jury retired to deliberate and, therefore, prohibited replacement of a
juror with an alternate after deliberations have begun. However, effective December 1, 1999, Fed.
R. Crim. P. 24(c) was amended to allow replacement of a juror with an alternate after deliberations
have begun. The federal rule now provides:

> (c)(3) **Retaining alternate jurors**. The court may retain alternate jurors after the
> jury retires to deliberate. The court must ensure that a retained alternate does not
> discuss the case with anyone until that alternate replaces a juror or is discharged. If
> an alternate replaces a juror after deliberations have begun, the court must instruct
> the jury to begin its deliberations anew.

Fed. R. Crim P. 24(c)(3) (2002).

Miller, 757 F.2d at 995. The Ninth Circuit held that the substitution of the alternate jurors did not violate appellants' federal constitutional rights because the procedure followed by the trial court "preserved the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." Id. (citing Williams [v. Florida], 399 U.S. [78] at 100 [1970], 90 S. Ct. at 1905). . . .

Analogous federal cases make clear that a violation of the established criminal procedure is not sufficient in itself to create a constitutional violation. Several courts have held that the substitution of an alternate juror after deliberations have begun in a federal criminal trial violates Rule 24(c) of the Federal Rules of Criminal Procedure. But despite the characterization of Rule 24(c) as "a mandatory requirement that should be scrupulously followed," federal courts have generally ruled that the substitution of a juror after deliberations have begun does not violate the United States Constitution, provided that defendants suffered no prejudice as a result. United States v. Phillips, 664 F.2d 971, 994-95 (5th Cir. Unit B 1981), cert. denied, 457 U.S. 1136, 102 S. Ct. 2965, 73 L. Ed. 2d 1354 (1982), and cert. denied, 459 U.S. 906, 103 S. Ct. 208, 74 L. Ed. 2d 166 (1982) (citing cases); see also Guevara, 823 F.2d at 448; Josefik, 753 F.2d at 587; Hillard, 701 F.2d at 1056-57. In Hillard, for example, a juror became ill after two and one-half days of deliberations and a three-day holiday recess. Hillard, 701 F.2d at 1055. The district court excused the ill juror and impaneled an alternate juror, and the jury returned several verdicts over the following two days. The Second Circuit upheld these verdicts against a constitutional challenge despite the violation of Rule 24(c) because the "essential feature" of the jury was preserved:

> The alternates were chosen along with the regular jurors and by the same procedures. They heard all the evidence and the instructions on the law with the regular jurors. Moreover, the alternate chosen to replace the ill juror reaffirmed his ability to consider the evidence and deliberate fairly and fully. . . . The trial judge instructed all the jurors to begin their deliberations anew. . . .

Id. at 1056-57. Thus, even though the pertinent rule of criminal procedure was violated, the court found no constitutional violation absent evidence that the defendant suffered prejudice as a result.

Claudio, 68 F.3d at 1575-76. After finding "no evidence that the substitution of the alternate juror compromised the 'essential feature' of a trial by jury," the Third Circuit affirmed the district court's denial of habeas corpus relief. Id. at 1577.

In this case, nothing in the record suggests that the trial judge's substitution of the alternate juror resulted in a violation of Petitioner's constitutional right to an impartial jury as guaranteed by

the Sixth and Fourteenth Amendments.  <u>Ristaino v. Ross</u>, 424 U.S. 589, 595 n.6 (1976) (citations omitted); <u>Ross v. Oklahoma</u>, 487 U.S. 81, 85 (1988).  The alternate juror was subject to the same selection procedures as the regular jurors (Dkt. ## 8-1, 8-2, Tr. Vols. I, II), and the alternate juror heard all of the evidence and was instructed on the law along with the regular jurors.  (Dkt. # 8-4, Tr. Vol. IV at 683).  Before the reading of the Information by the prosecutor, the trial judge admonished all of the jurors, including the alternate, not to discuss the case with anyone, not to watch or listen to any television or radio reports about it, not to visit the scene or investigate the case independently.  (Dkt. # 8-2, Tr. Vol. II at 357-58).  The trial judge told the jurors, "[t]his case must be decided solely upon the evidence presented to you in this court free from any outside influence." <u>Id.</u> at 358.  However, just before the jury retired to begin deliberations, the trial judge told the alternate, Juror Mitchell, "you're certainly free to go about your business as along as we can contact you and get you down here inside of about half an hour."  (Dkt. # 8-4, Tr. Vol. IV at 723).  Juror Mitchell was not sequestered or admonished not to discuss the case with anyone.  Also, the record does not reflect that the trial court instructed the reconstituted jury to begin its deliberations anew.[5]

Even though the alternate was not sequestered, either physically or through admonishment, and the trial judge did not instruct the reconstituted jury to begin its deliberations anew, Petitioner has made no showing that the alternate or any of the regular jurors failed to follow the trial judge's admonitions as given at the beginning of trial.  Significantly, nothing in the record before the OCCA at the time of Petitioner's direct appeal demonstrated that he suffered prejudice resulting from the

---

[5]Unlike Fed. R. Crim. P. 24(c)(3), Oklahoma law does not specifically require that a reconstituted jury be instructed to "begin its deliberations anew."  Instead, Oklahoma law provides that "[i]n the event one or two of the twelve jurors shall, during the course of deliberations, be discharged because of illness, or die, the court shall order one or both alternate jurors to take their places in the jury room and deliberations shall then continue."  Okla. Stat. tit. 22, § 601b.

substitution of the alternate juror after deliberations had begun.[6]  Claudio, 68 F.3d at 1576; United States v. Olano, 507 U.S. 725, 737-38 (1993) (finding that, although presence of alternate jurors during deliberations was "no doubt a deviation from [Fed. R. Crim. P.] 24(c)," prejudice would not be presumed and defendant was required to show resulting prejudice to his "substantial rights"). Although Petitioner argues that the State must overcome "the presumption of prejudice which arises when an alternate juror is seated who was not sequestered physically or by admonition," he points to no Supreme Court decision supporting a Fourteenth Amendment claim that, under the facts presented in this case, prejudice is presumed.  See Carey v. Musladin, 549 U.S. 70, 77 (2006) (stating that "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of . . . [the] conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law'").  Thus, Petitioner has not demonstrated that the OCCA's decision rejecting his Fourteenth Amendment claim on direct appeal was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.  For that reason, habeas corpus relief on ground 5 is denied.

## C.     Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of

---

[6]In resolving Petitioner's habeas corpus claims, this court's review is limited "to the record that was before the state court that adjudicated the claim on the merits."  Pinholster, 131 S. Ct. at 1398.   The OCCA adjudicated Petitioner's ground 5 habeas claim on the merits as part of Petitioner's direct appeal.  Based on Pinholster, this Court's review is limited to the record presented to the OCCA as part of the direct appeal.  Thus, the Court may not consider the Affidavit of Stuart W. Southerland provided in support of Petitioner's application for post-conviction relief.  See Dkt. # 7-4 at 13-14.  That evidence has never been presented to the OCCA because Petitioner failed to perfect an appeal from the trial judge's denial of post-conviction relief to the OCCA.

appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court finds that a certificate of appealability should not issue because nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable amongst jurists of reason. Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

## CONCLUSION

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, the petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note the **substitution** of Robert Patton, Director, as party respondent in place of C. Chester, Warden.

2. The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.

**DATED** this 18th day of March, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE